DISTRICT COURT
DENVER COUNTY, COLORADO

1437 Bannock Street, Room 256
Denver, CO 80202

DATE FILED: January 30, 2015 5:03 PM
FILING ID: B05D0A93CE5EC
CASE NUMBER: 2013CV32857

Plaintiff:

STATE OF COLORADO, et al.

V.

Defendant:

BOOBIES ROCK, et al.

. COURT USE ONLY .

Case Number:
   2013-CV-032857

For Plaintiff:

Alissa Gardenswartz, Esq., R/N 36126
Jeffrey M. Leake, Esq., R/N 38338

Courtroom 269

VOLUME I OF II

Office of the Attorney General
Ralph L. Carr Colorado Judicial Center
1300 Broadway, 7th Floor
Denver, CO 80203
Phone: 720.508.6204
Fax: 720.508.6040

For Defendant:
James Scherer, Esq., R/N. 14291
Miller & Law, P.C.
1900 West Littleton Blvd.
Littleton, CO 80120
Phone: 303.722.6500
Fax: 303.722.9270.

 The matter came on for hearing on Monday, November 03, 2014, before the HONORABLE SHELLEY GILMAN, Judge of the District Court, and the following FTR Proceedings, transcribed from an electronic recording, were had.

 The Defendant appears in person.

## Page 2

```
                    I N D E X
                                          PAGE
TABLE OF EXHIBITS                           3

TESTIMONY OF CARI MERRIAM
    Direct Examination By Ms. Gardenswartz    14
    Cross-Examination By Mr. Scherer          43
    Redirect Examination By Ms. Gardenswartz  51
TESTIMONY OF JENNA M. LEVESQUE
    Direct Examination By Ms. Gardenswartz    53
    Cross-Examination By Mr. Scherer          86
    Redirect Examination By Ms. Gardenswartz  97

TESTIMONY OF EMILY GEEVES
    Direct Examination By Ms. Gardenswartz    103
    Cross-Examination By Mr. Scherer          118
    Redirect Examination By Ms. Gardenswartz  126

CERTIFICATE OF COURT TRANSCRIBER            246
```

## Page 3

TABLE OF EXHIBITS

|  | Offered for Identification | Admitted Into Evidence |
|---|---|---|
| PLAINTIFF'S EXHIBIT 11 | 35 | 35 |
| PLAINTIFF'S EXHIBIT 12 | 13 | 13 |

## Page 4

DENVER, COLORADO; MONDAY, NOVEMBER 03, 2014

(Call to Order at 9:33 a.m.)

THE COURT: Please be seated, thank you. Okay, this is 13CV032857; State of Colorado versus Boobies Rock, et al. If Counsel could please enter their appearance?

MS. GARDENSWARTZ: Good morning, Your Honor, Alliss Gardenswartz for Plaintiff the State of Colorado, registration number 36126.

MR. LEAKE: Good morning, Your Honor, Jeff Leake for the State of Colorado as well, registration number 38338.

THE COURT: Thank you.

MS. GARDENSWARTZ: Oh, and Your Honor, I just wanted to let you know we do have two other people sitting with us here. Hannah Harris-Yeager (phonetic) is a law fellow in the Attorney General's Office and she'll be sitting with us through trial. And Ken King is our investigator and if stipped that we have witnesses sequestered we would ask that he stay in because his is an advisory witness.

THE COURT: Okay, on behalf of the Defendant?

MR. SCHERER: Your Honor, good morning. Jim Scherer appearing for the Defendants all appearing at the defense counsel table is Mr. Adam Shryock.

THE COURT: Okay. And the matter is set for trial. Are both sides ready to proceed?

MS. GARDENSWARTZ: Yes, Your Honor.

## Page 5

MR. SCHERER: Defense is ready.

THE COURT: And does either side request an order of sequestration?

MS. GARDENSWARTZ: I believe we're in agreement that an order of sequestration is proper.

THE COURT: Okay.

MR. SCHERER: That's correct, Your Honor.

THE COURT: Then we will put a sign on the door but please advise your witnesses accordingly. I know there's a pretrial issue regarding the deposition transcript objections. Are there any other pretrial matters?

MR. SCHERER: The only one that I think that might be helpful to address pretrial and I've discussed it with Counsel is the question of immunity. My understanding is that the State will be calling Mr. Shryock as a witness. Noted under the CCSA and CCPA there are potential criminal penalties for certain violations. Also apparently there is some investigation to his tax returns.

My understanding under C.R.S. 6-1-111 is that any compelled testimony under the CCPA is immunized from criminal prosecution use immunity.

THE COURT: Well somebody -- my Title Six is missing here. Does somebody have my Title Six?

MR. SCHERER: The Court is going to need that a lot this week I think.

2 (Pages 2 to 5)

Page 6

1  THE COURT: I know. It's mysterious that it is
2  missing.
3  MR. SCHERER: The issue this and I think we have it
4  resolved it. I think we just need the Court's agreement. The
5  issue is whether or not trial testimony on a civil enforcement
6  proceeding is covered by the immunity provisions of the
7  statute. There is one case that both sides have been able to
8  find, Jordan v. Smith. I don't have the cite right here but it
9  does appear to say --
10  THE COURT: So first get me to the right section,
11  6-1 --
12  MR. SCHERER: 6-1-111.
13  THE COURT: And what section talks about immunity?
14  MS. GARDENSWARTZ: Your Honor, the relevant provision
15  is 6-1-111. I believe it is 1.
16  THE COURT: Okay.
17  MR. SCHERER: I'll defer to Counselor. Thank you.
18  THE COURT: Okay.
19  MR. SCHERER: Again the issue is whether or not --
20  certainly making a statement in response to the civil
21  investigative demand under the CCAS/CCPA would be covered by
22  the statute. The question is whether trial testimony is also
23  covered by the immunity provisions of the statute. Both sides
24  have looked at Jordan v. Smith a court of appeals case. It
25  seems to be the last and only word on the issue.

Page 7

1  It appears but not clearly to state that the immunity
2  under the statute does extend to trial testimony. I think it
3  sort of assumes it. My understanding is the State is taking
4  the position that the immunity convictions of the statute do
5  apply.
6  I'm not sure they're wrong. I just want to avoid a
7  situation where he is testifying and it later turns out that
8  that provision does not apply to his trial testimony.
9  MS. GARDENSWARTZ: And Your Honor, if you'd like I
10  have the cite for -- the case is actually Smith v. Jordan.
11  THE COURT: And I have -- it's in the --
12  MS. GARDENSWARTZ: It's the annotations I'm sure.
13  THE COURT: -- annotations but -- well I could accept
14  a stipulation from you that the testimony is subject to this
15  provision but I can't say what another court will rule.
16  MS. GARDENSWARTZ: Right. And that's our position,
17  Your Honor, is really is that the statute says what it says --
18  Smith v. Jordan says what it says. We believe that those two
19  things read together show that the Defendant's testimony is
20  immunized per 6-1-111 and think we could leave it at that
21  obviously understanding that another court may have a different
22  annotation of --
23  THE COURT: Right. I will approve your stipulation
24  but I again can't tell you what --
25  MR. SCHERER: I understand --

Page 8

1  THE COURT: If another agency were to do an
2  investigation and the issue became before another judge I
3  cannot say what another judge will do.
4  MR. SCHERER: Yes, and I think the Court's right.
5  And that is exactly my concern. I'm trying -- you know, I'm
6  trying to act out of an abundance of caution here. I am not
7  convinced reading the reading the Smith v. Jordan case that it
8  absolutely holds that. It has to do with trial testimony on
9  civil court's connection with the CCPA but it does not come out
10  in whole. It discusses different issues and sort of assumes
11  that the statute applies.
12  To discharge my responsibilities properly and again I
13  don't want to cause unnecessary difficulties but if there is an
14  issue just to give the Court a heads up I may have to advise
15  him to exercise his right against self incrimination and the
16  Court will have to take whatever steps it feels based upon its
17  reading of the law at that time.
18  THE COURT: Yes. And of course I have not read the
19  case. I didn't know this was an issue.
20  MR. SCHERER: I should have brought it up a pretrial.
21  THE COURT: So --
22  MR. SCHERER: I'm sorry, Your Honor. I --
23  THE COURT: I will look at it over the break. He's
24  not your first witness?
25  MS. GARDENSWARTZ: Well right, Your Honor. I was

Page 9

1  going to suggest -- I don't think we are planning to call
2  Mr. Shryock until probably Wednesday.
3  MR. SCHERER: Oh, I thought --
4  MS. GARDENSWARTZ: So there is --
5  MR. SCHERER: -- he was the first witness, I'm sorry.
6  MS. GARDENSWARTZ: Oh, no, no, no. So I think that
7  there's some time if the Court would like to review the case.
8  THE COURT: I will.
9  MS. GARDENSWARTZ: And we can go from there.
10  THE COURT: That would work. Okay. All right, are
11  there any pretrial matters?
12  MS. GARDENSWARTZ: Your Honor, the only thing that
13  can think of is there is the issue of the advisement on the
14  content and I didn't know but you had suggested the last time
15  we were here that perhaps you wanted to get that done today. I
16  don't know if that's something --
17  THE COURT: I am going to defer to defense because I
18  promised I would not let that issue distract from this trial.
19  MS. GARDENSWARTZ: Right.
20  THE COURT: So if you want to just remind me at the
21  end of trial?
22  MR. SCHERER: That would --
23  THE COURT: Or do you want to just waive the
24  advisement and --
25  MR. SCHERER: We'll waive the advisement, Your Honor.

3 (Pages 6 to 9)

Page 10

1  I think it's simpler.
2       MS. GARDENSWARTZ: Yes.
3       THE COURT: Okay. And so my understanding is that
4  the State is proceeding with both the remedial and punitive
5  sanctions?
6       MS. GARDENSWARTZ: That's correct, Your Honor.
7       THE COURT: Okay, so he waives his -- the full
8  advisement on both types of contempt?
9       MR. SCHERER: That is correct.
10      THE COURT: Okay. Then the Court will accept the
11 waiver of advisement and we will wait until the end of this
12 trial to set the hearing or do you want to set it now? Your
13 pleasure.
14      MR. SCHERER: Can we wait until the end?
15      THE COURT: Absolutely.
16      MR. SCHERER: One less thing on my plate.
17      THE COURT: Absolutely.
18      MR. SCHERER: Thank you, Judge.
19      THE COURT: I made that promise. Okay, then only
20 pretrial matters I have are the two depositions -- the
21 deposition objections regarding Desiree Cottet.
22      MS. GARDENSWARTZ: Yes.
23      THE COURT: And there was first the State's objection
24 to page 175, lines 4 through 25 and line 176 -- page 176, lines
25 1 through 25. I am going to overrule the objection. There was

Page 11

1  also a request that the article be admitted. And I think the
2  article can be used just to show that that's the article he was
3  talking about but not for the truth of the matter of what's in
4  the article. Does that make sense to both sides?
5       MR. SCHERER: It does for the defense, Your Honor.
6       THE COURT: Okay.
7       MS. GARDENSWARTZ: Yes, Your Honor.
8       THE COURT: Then there were also the objections --
9  Defendant's objections to Plaintiff's designation of testimony
10 of Desiree Cottet and I was having trouble ruling on that
11 because I don't have context for it. So it may make more sense
12 when we get to that point for me to rule on once I have some
13 evidence. The objection is that it is 404(B) evidence and I
14 don't know if that's what the State is intending to offer for
15 or other issues.
16      MS. GARDENSWARTZ: Your Honor, Mr. Leake can speak to
17 that.
18      MR. LEAKE: Your Honor, I don't believe we're
19 intending to offer it for character evidence.
20      THE COURT: Well it's -- 404(B) is not really
21 character, it's other transactions.
22      MR. LEAKE: Other transactions, right. Yes, Your
23 Honor. And Your Honor, I have also prepared points to discuss
24 regarding that particular piece of the deposition and it is
25 sort of lengthy. I was wondering if the Court would consider

Page 12

1  that perhaps maybe if we postponed some discussion about the
2  deposition transcript until this afternoon. I'm aware --
3       THE COURT: When will she testify?
4       MR. LEAKE: We're talking about Cottet?
5       THE COURT: Yes.
6       MR. LEAKE: Ms. Cottet will not testify. We are only
7  offering her deposition transcript because she is unavailable
8  for trial. She's an out-of-state witness.
9       THE COURT: Right.
10      MR. LEAKE: And --
11      THE COURT: Well I mean when are you going to present
12 her testimony?
13      MR. LEAKE: Your Honor, I don't think at any time we
14 plan to present it. My understanding from the pretrial order
15 is that we don't have to necessarily read the transcript into
16 the record.
17      THE COURT: Okay.
18      MR. LEAKE: So I don't plan on really referring to
19 Ms. Cottet during the opening statement. I think that this
20 afternoon knowing our witness schedule it could lighten up just
21 a little bit. That might be a better window.
22      THE COURT: Okay, that's fine. So what will probably
23 happen is that at the end of the trial I will have you submit
24 proposed findings of fact and conclusions of law. And then I
25 can read also all of the deposition testimony and just make

Page 13

1  sure I have it. I think that it's been filed but make sure I
2  have all of the depositions I need to read and that there --
3  those were the only objections that there were, correct?
4       MR. LEAKE: Yes, Your Honor.
5       MS. GARDENSWARTZ: Yes.
6       MR. SCHERER: That's correct.
7       THE COURT: Okay. So we can deal with that down the
8  road. That's not an urgent issue. Are there any other matters
9  before we proceed?
10      MS. GARDENSWARTZ: Not that we're aware of, Your
11 Honor.
12      THE COURT: Okay.
13      MR. SCHERER: Not for the defense, Your Honor.
14      THE COURT: It's really dark in here. Why don't we
15 open some of the blinds? You have full authority to close them
16 because sometimes the light comes in at different times of the
17 day and it will hit you right in the face so -- right now it is
18 so dark. You don't have to open -- just open the blind part.
19 It's just so dark like we're in the dead of winter. It's
20 just -- you don't fold them up, just kind of the other one
21 where it -- it just -- they swivel up. I think it might be the
22 other side. I think it's the one on the other side. Yes,
23 there we go. Oh, wonderful. It's the one on the left that you
24 need, yes. They don't teach that in law school but my fellow
25 figured it out. Much better.

```
DISTRICT COURT
DENVER COUNTY, COLORADO
                                    DATE FILED: January 30, 2015 5:03 PM
1437 Bannock Street, Room 256       FILING ID: B05D0A93CE5EC
Denver, CO 80202                    CASE NUMBER: 2013CV32857

Plaintiff:

STATE OF COLORADO, et al.

V.
                                        .  COURT USE ONLY   .
Defendant:

BOOBIES ROCK, et al.                    Case Number:
                                            2013-CV-032857

For Plaintiff:
                                        Courtroom 269
 Alissa Gardenswartz, Esq., R/N 36126
 Jeffrey M. Leake, Esq., R/N 38338
                                        VOLUME I OF II
 Office of the Attorney General
 Ralph L. Carr Colorado Judicial Center
 1300 Broadway, 7th Floor
 Denver, CO 80203
 Phone:  720.508.6204
 Fax:    720.508.6040

For Defendant:
 James Scherer, Esq., R/N. 14291
 Miller & Law, P.C.
 1900 West Littleton Blvd.
 Littleton, CO 80120
 Phone:  303.722.6500
 Fax:    303.722.9270.
```

     The matter came on for hearing on Wednesday, November 05, 2014, before the HONORABLE SHELLEY GILMAN, Judge of the District Court, and the following FTR Proceedings, transcribed from an electronic recording, were had.



     The Defendant appears in person.

| Page 143 | Page 145 |
|---|---|
| 1  start date through June 13. | 1   Q   And when you say these accounts what accounts was he |
| 2   Q   Okay, but you just took the amounts deposited on each | 2  referring to? |
| 3  as stated on each monthly statement where those were available | 3   A   That's the four accounts that we identified that we |
| 4  and you just added those up, is that what you did? | 4  were specifically asking about because those are the ones we |
| 5   A   Deposits, correct. | 5  knew. |
| 6   Q   Okay. You understand that Boobies Rock and Say No To | 6      MS. GARDENSWARTZ: Nothing further, Your Honor. |
| 7  Cancer had business expenses, did you not? They had to | 7      THE COURT: Okay. |
| 8  purchase inventory, do marketing, pay payroll and that type of | 8      MR. SCHERER: No questions. |
| 9  thing? | 9      THE WITNESS: Thank you. |
| 10   A   That is correct. | 10      THE COURT: Thank you for your testimony. The |
| 11   Q   Now you talked to Mr. Shryock. The conversation you | 11  Plaintiff's next witness? |
| 12  just talked about you stated his business model was to tie in | 12      MS. GARDENSWARTZ: Your Honor, at this time we would |
| 13  his business to a cause, is that right? | 13  call the Defendant Adam Shryock as an adverse witness. |
| 14   A   And I don't remember the exact wording but when we | 14      MR. SCHERER: Your Honor, at this time you know the |
| 15  talked about he was somewhat I don't if you can say confused or | 15  issue that I raised in the beginning of trial is raised in |
| 16  questioning what's the problem with what I'm doing, this is | 16  earnest I think. As we talked with Counsel before trial and |
| 17  what I've done. And I stated well but that model of using a | 17  was advised before the beginning of trial I do have a concern |
| 18  charity or a scholarship that is essentially what brought our | 18  about whether or not Mr. Shryock's trial testimony is covered |
| 19  action to you today. | 19  by 6-16-10 -- |
| 20   Q   Okay. The gist of what he told you was his business | 20      MR. LEAKE: 6-11 -- |
| 21  model was to tie in the marketing of merchandise into a cause, | 21      MS. GARDENSWARTZ: 1-11. |
| 22  is that right? | 22      MR. SCHERER: 6-1-111, sorry. From -- you know I -- |
| 23   A   I remember him specifically saying anyone can sell t- | 23  Counsel has cooperated I think in looking at case law on this |
| 24  shirts, this is what makes me do it. | 24  and the one we found was Jones v. Jordan decision (sic). |
| 25   Q   That would be the same as -- you've heard the term | 25      MS. GARDENSWARTZ: Your Honor, it's Smith v. Jordan. |

| Page 144 | Page 146 |
|---|---|
| 1  cause marketing during trial here? | 1      MR. SCHERER: Smith v. Jordan. |
| 2   A   I have. | 2      THE COURT: Right. |
| 3   Q   All right. | 3      MR. SCHERER: I should know that by now. It seems to |
| 4      MR. SCHERER: I have nothing further. Thank you. | 4  be the only word on it. State's counsel believes that that is |
| 5      THE COURT: Redirect? | 5  dispositive of the issue and that his testimony would be |
| 6      MS. GARDENSWARTZ: Just briefly, Your Honor. | 6  covered by that. I am -- I think they may be right but I'm not |
| 7          REDIRECT EXAMINATION | 7  a hundred percent convinced. I do have a legitimate concern I |
| 8  BY MS. GARDENSWARTZ: | 8  think about the use of this. |
| 9   Q   Mr. King, you attended Mr. Shryock's deposition in | 9      Based upon that concern I have advised Mr. Shryock to |
| 10  this case, did you not? | 10  exercise his right against self-incrimination in response to |
| 11   A   Yes, I did, yes. | 11  any questions until however less the Court rules that his |
| 12   Q   And you reviewed his deposition transcript? | 12  testimony is in fact immunitized (phonetic) and at that point |
| 13   A   I did. | 13  he would be required to testify. |
| 14   Q   So looking at the accounts that Mr. Scherer just took | 14      MS. GARDENSWARTZ: And Your Honor, if I may just |
| 15  you through do you recall -- let me ask you this, do you recall | 15  clarify the State's position? The State's position is that the |
| 16  if Mr. Shryock testified about his income? | 16  case says what it says and the statute says what it says which |
| 17   A   I don't recall if he testified to his personal | 17  is that compelled testimony under the CCPA is immunity -- that |
| 18  income. I recall seeing what he represented as his personal | 18  testimony can't be used against somebody in a criminal |
| 19  income on different credit obligations. | 19  prosecution. |
| 20   Q   Right. Do you recall a discussion about how Mr. | 20      THE COURT: And what about Smith v. Jordan causes you |
| 21  Shryock used these business accounts for his own expenses? | 21  pause? |
| 22   A   Essentially he stated that these were accounts that | 22      MR. SCHERER: It doesn't come out in whole that trial |
| 23  he used for any purpose business or personal. And when we | 23  testimony is covered by the statute. It involves the case |
| 24  asked him well how do you know he had indicated that well I can | 24  where somebody was testifying at trial and it does reference |
| 25  basically do the math in my head and I know what it is. | 25  the statute but it resolves the case in other issues. I think |

Page 147

1  it assumes without deciding that the trial testimony was
2  subject to immunity.
3       THE COURT: Well that case seems to be talking only
4  about a law enforcement officer initiating the investigation --
5  distinction, yes.
6       MR. SCHERER: As I recall. I don't have the case in
7  front of me.
8       THE COURT: The Court finds -- and again I can't say
9  what will happen down the road but the Court's reading of both
10 People Ex Rel Smith v. Jordan at 689 P.2d 1172 and then 6-1-111
11 provides the protections of immunity for this testimony.
12      MR. SCHERER: So the Court is holding that trial
13 testimony such as Mr. Shryock's would be subject to immunity
14 under the statute?
15      THE COURT: Yes, I think both sides agree to that,
16 correct?
17      MS. GARDENSWARTZ: Yes, Your Honor. We think that
18 that is how both the statute and the case are read.
19      MR. SCHERER: And I'm going to totally defer to the
20 Court's position on it, the Court's former ruling on that, and
21 --
22      THE COURT: Yes, I will --
23      MR. SCHERER: And as --
24      THE COURT: Well first the Court will find that
25 parties agree and the Court believes that agreement is well

Page 148

1  founded based on 6-1-111 and People Ex Rel Smith v. Jordan.
2  It's an unusual statute giving this protection but there's a
3  reason for it. So that -- because otherwise such information
4  may not been able to have been received by the Attorney
5  General's Office.
6       MR. SCHERER: Uh-huh.
7       THE COURT: So it's a quid pro co, I guess.
8       MR. SCHERER: Given the Court's ruling I would assume
9  that if you were to attempt to exercise his right against self-
10 incrimination he would be risking contempt, is that --
11      THE COURT: Yes, in an inference to be held against
12 him.
13      MR. SCHERER: Well Your Honor, the (indiscernible)
14 inference only applies where the Fifth Amendment right is
15 validly exercised. If the Court is finding that this testimony
16 today would be immune --
17      THE COURT: Yes.
18      MR. SCHERER: -- and I'm not trying to be sophistic
19 here but I just want to be careful. If the Court is finding
20 that his testimony today is covered by the immunity provision
21 of 6-1-111 then he would have no valid right to exercise his
22 Fifth Amendment right because the stripping of that right is
23 co-extensive with the immunity provided by the statute.
24      So in my understanding it would -- it's the Court is
25 finding that the statute does apply to trial testimony.

Page 149

1       THE COURT: Yes.
2       MR. SCHERER: Yes.
3       THE COURT: And I haven't seen no reason not to. It
4  says any testimony.
5       MR. SCHERER: Okay.
6       THE COURT: It's not limited. So it's no different
7  then the testimony they received through a deposition.
8       MR. SCHERER: Okay. I will defer to the Court's
9  ruling and based on that I will direct Mr. Shryock not to
10 exercise any Fifth Amendment right that he otherwise would have
11 had but for the statute.

Page 150