IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No.  16-mj-01161-MJW

UNITED STATES OF AMERICA,

      Plaintiff,

v.

ADAM C. SHRYOCK,

      Defendant.

---

**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION
FOR A VARIANT SENTENCE, ECF 42**

---

The United States of America, by and through Martha A. Paluch, Assistant United States Attorney, hereby responds to defendant's motion for a variant sentence, ECF 42.

### Introduction

At the January 25, 2018 sentencing hearing, the government will request that the Court sentence the defendant to 12 months in prison.  The probation office recommends this sentence as well.  ECF 43-1.  The defendant requests that the Court instead impose a variant sentence of five years of probation, based upon arguments framed by the factors set forth in 18 U.S.C. § 3553(a).  ECF 42.  The government responds as follows:

### Section 3553(a)(1) -- nature and circumstances of the offense and the history and characteristics of the defendant

The instant case stems from the defendant's failure to file tax returns reporting the income earned by him and his businesses, to include Boobies Rock, between 2011

1

and 2013.  As stated in the plea agreement, the proceeds from Boobies Rock and the defendant's other businesses were at least $2.4 million.  During the years of investigation, over 2200 cash deposits totaling over $1.8 million were made into the defendant's bank accounts.  He used some of these proceeds to support his lifestyle and asserted that the rest of the money was used to operate his business. ECF 22 at 6.

During the years of investigation, Boobies Rock held anywhere from 3600 to 4500 promotional events in Colorado and throughout the country wherein sales reps sold breast cancer awareness merchandise and accepted donations at bars and sporting events.  *Id.* at 5. The plea agreement references the legal actions taken by the State of Colorado against the defendant in relation to his operation of Boobies Rock.  *Id.* As noted in the presentence report (PSR), the defendant was named in a civil suit filed by the Colorado Attorney General's Office in Denver District Court due to his deceptive actions related to charitable donations, and this resulted in the defendant closing down Boobies Rock.  ECF 43 at 13, ¶ 64.  The defendant states that after a court trial in March of 2015 in this matter, he was ordered "to pay civil penalties resulting in a $4,000,000 judgment, which was satisfied partially by an Asset Freeze Order, plus attorney's fees."  ECF 42 at 3.

The government inquired of the Attorney General's Office as to the status of the defendant's outstanding judgment and was informed that the defendant was ordered to pay over $6 million for unjust enrichment, civil penalties, attorney fees, and costs.  *See* Attachment 1 (Affidavit of Investigator Kenneth King, Colorado Attorney General's Office).  According to Investigator King, the defendant has made no payments towards this court order.  The court ordered a freeze of $22,247.74, which amount was to be

2

used for "attorney's fees and costs, restitution, and for future consumer education and consumer protection enforcement." *Id.* at 2. The defendant's claims that he is "gainfully employed" and "able to pay restitution" in this case. ECF 42 at 14. However, given his approximately $3,500 per month salary, ECF 43 at 14-15, ¶ 68, it is notable that the defendant has paid nothing towards his $6 million debt to the State of Colorado.

The defendant also argues that he "has been punished and deterred by the nearly 3 years of litigation and resulting sanctions imposed in the civil proceeding concluded in January of 2016." ECF 42 at 3. His continued criminal conduct refutes this assertion. A few months after his March 2015 civil trial related to his Boobies Rock activities, he was charged with the felony offense of Charitable Fraud – Scheme to Defraud. This charge stemmed from his reselling of donated mattresses. ECF 43 at 9, ¶ 38. For this offense, in May of 2016, he served 60 days in jail and was sentenced to four years' probation on a misdemeanor theft conviction and received a deferred judgment on the felony charge. *Id.* and ECF 42 at 4-5. The defendant correctly notes that he and his co-defendant were ordered "to pay $50,000 in restitution, jointly and severally, which has been paid in full." ECF 42 at 5. However, the docket sheet attached to the defendant's motion, Attachment B, shows that the defendant paid $7,174 towards the restitution amount, ECF 42-2 at 17, while his co-defendant paid the remainder. *Id.* at 8-9.[1]

The defendant reported to the probation officer that he was unemployed between mid-2013 and when he started his current company Boozie Brand in mid-2015. ECF 43 at 13, ¶¶ 62- 63. He stated that this company makes $15,000 per month and that his

---

[1] The defendant also paid $2,863.50 in court costs.

and his partner's salaries total $7,000.  *Id.* and ¶ 68.  Based on these amounts, it appears the defendant was required to file individual and corporate tax returns for the years 2015 and 2016 and he has not done so.[2]  Apparently, the instant charges have not deterred the defendant from violating the tax laws.[3]

Finally, as to this defendant's background, he describes a good childhood, growing up in an "upper class" family, and attending some college.  *Id.* at 11, ¶ 45; at 13, ¶¶ 58-59.  Criminals from the middle or upper-middle class "who have the education and training that enables people to make a decent living without resorting to crime are more rather than less culpable than their desperately poor and deprived brethren in crime."  *United States v. Stefonek*, 179 F.3d 1030, 1038 (7th Cir. 1999).  It was not the defendant's lot in life that led him to commit the instant offense; his crimes appear to be motivated by greed.  He did not want to pay what he owed to the government for the earnings from his "for profit" business Boobies Rock.

In sum, the nature and circumstances of the instant offense, and the history and characteristics of this defendant as detailed above clearly support a sentence of 12 months in prison.

### Section 3553(a)(2) – seriousness of the offense, promote respect for the law, just punishment, and adequate deterrence

All of these considerations are served through a 12-month sentence.  Defendant does not appear to grasp the seriousness of ignoring the tax laws.  He made approximately $2.4 million through his businesses and did not file individual or corporate

---

[2] The defendant's tax transcripts for the years 2014 through 2016 were recently ordered and provided to the defendant through his counsel.

[3] Notably, a condition of the defendant's state probation is providing to his probation officer his federal and state tax returns, ECF 42 at 5, and he has not done so.

tax returns, resulting in a tax loss of $430,970 in just a few years.  While he claims the only harm caused by his offense is a "monetary loss to the IRS," ECF 42 at 16, the Court cannot ignore the manner in which the defendant earned his income:  soliciting donations allegedly to aid breast cancer research.  This conduct landed him in Denver District Court and resulted in a $6 million judgment entered against him.  A custodial sentence will promote respect for the law and provide just punishment for the instant offense.

The government disputes the defendant's claim that a sentence of probation in this case will deter him from further criminal conduct. This case should have caught his attention; instead, he has yet to file a tax return.  The defendant cites to a study for the proposition that the severity of sentences does not enhance "deterrent effects."  ECF 42 at 12.  However, certain courts disagree.  "Because economic and fraud-based crimes are more rational, cool, and calculated than sudden crimes of passion or opportunity, these crimes are prime candidates for general deterrence."  *United States v. Musgrave,* 761 F.3d 602, 609 (6th Cir. 2014) (citing other cases from the 6th Circuit and one from the 11th Circuit); *United States v. Martin*, 455 F.3d 1227, 1240 (11th Cir. 2006) ("Defendants in white collar crimes often calculate the financial gain and risk of loss, and white collar crime can therefore be affected and reduced with serious punishment").  A custodial sentence is warranted in this case to deter this defendant from future crimes, and to deter others from violating the tax laws.  Indeed, the court in *United States v. Engle*, 592 F.3d 495 (4th Cir. 2010), noted the importance of general deterrence when sentencing in tax cases:  "Criminal tax prosecutions serve to punish the violator and promote respect for the tax laws.  Because of the limited number of

criminal tax prosecutions relative to the estimated incidence of such violations, deterring others from violating the tax laws is a primary consideration underlying these guidelines." *Id.* at 501-02 (quoting U.S.S.G. Ch. 2, Pt. T, introductory cmt. (1998)).

The defendant next claims that "lengthy supervision with the requirements of paying restitution and financial supervision" outweighs any benefit from incarceration. ECF 42 at 12.  The Court need look no further than the manner in which the defendant has treated previous orders of restitution to know this argument carries no weight.  He has made no payments towards the $6 million judgment ordered by Denver District Court in 2015.  Attachment 1.  The PSR notes the numerous outstanding judgments and liens against the defendant across the country that were filed between 2006 and 2011.  ECF 43 at 14-15, ¶ 68.  Instead of making payments towards any of these outstanding obligations (or payments towards the restitution he owes in this case), the defendant has spent his money to live in a nice house and drive luxury cars.  ECF 43 at 16 n.7.

All of these reasons support a sentence of 12 months in prison.

### Section 3553(a)(4) – the advisory guideline range

The defendant next makes an "empirical data" argument, claiming that the Court should disagree with the guidelines because "the Commission failed to rely on empirical data or national experience in promulgating or amending §§ 2T1.1 & 2T4.1."  ECF 42 at 7.  This argument is easily disposed of.  First, given the large amount of tax loss in this case, the advisory guideline range is 21 to 27 months.  ECF 43 at 17, ¶ 75.  Had the defendant been convicted at trial of all six counts, he would be facing a possible sentence of up to six years in prison.  *Id.* at 76.  However, given the plea agreement

reached in this case and accepted by the Court, the defendant is facing a statutory maximum sentence of 12 months in prison.  While the Court is required to consider the guidelines in fashioning an appropriate sentence, the sentence sought by the government and probation is far below that range.  Accordingly, there is no need for this Court to determine whether that range comports with empirical data.  In any event, the Tenth Circuit has made clear that regardless of any alleged lack of empirical support, it will apply a presumption of reasonableness to a within-guidelines sentence when reviewing it on appeal.  *United States v. Franklin,* 785 F.3d 1365, 1370 (10th Cir. 2015) (quotation omitted); *see also United States v. Grigsby,* 749 F.3d 908, 910–11 (10th Cir. 2014) ("[e]mpirically based or not, the Guidelines remain the Guidelines.... The Supreme Court made clear in *Kimbrough v. United States* that 'a district judge must include the Guidelines range in the array of factors warranting consideration,' even if the Commission did not use an empirical approach in developing sentences for the particular offense.  Accordingly, we will not reject a Guidelines provision as "unreasonable" or "irrational" simply because it is not based on empirical data") (internal citations omitted).

The defendant makes much of the fact Chapter One, Part A(4) of the guidelines references tax evasion, and not failure to file, as an offense for which sentences of probation have been granted to "an inappropriately high percentage of offenders."  ECF 42 at 7.  The passage the defendant relies upon is not an exhaustive list of offenses, but rather references "certain economic crimes, *such as*" theft and tax evasion (emphasis added).  Any question that the Commission believes tax offenses are serious and warrant prison time is dispelled by reference to the background commentary to § 2T1.1:

7

"This guideline is intended to reduce disparity in sentences for tax offenses and to somewhat increase average sentence length . . . Guideline sentences should result in small increases in the average length of imprisonment for most tax cases that involve less than $100,000 in tax loss.  The increase is expected to be somewhat larger for cases involving more taxes."  *Id.* at 8.  Given the tax loss in this case, a term of imprisonment is warranted and supported by the guidelines and the commentary to them.

Finally, as to the defendant's arguments that the distinction between felony and misdemeanor convictions is not accounted for due to the fact the same tax table applies to both, that concern is not implicated here as the maximum sentence available to the Court pursuant to the terms of the plea agreement is the statutory maximum for a misdemeanor conviction as set by Congress.  Nonetheless, the defendant is correct that the tax table can drive more substantial sentences for misdemeanor convictions due to the amount of tax loss.  *See United States v. Sullivan,* 255 F.3d 1256, 1264 (10th Cir. 2001) (defendant sentenced to three 10-month sentences to run consecutively for each of his three § 7203 convictions with a tax loss of $337,603); *United States. v. Lawson*, 670 F.2d 923, 928 (10th Cir. 1982) (defendant sentenced to 4 months in prison on two § 7203 convictions where gross income for the two years was $62,633); *United States v. Dillon,* 566 F.2d 702, 703 (10th Cir. 1977) (defendant sentenced to 6 months in prison on two § 7203 convictions where gross income for the two years was $33,500); *United States  v. Jackson,* 315 F. App'x 127, 128 (11th Cir. 2008) (defendant, former IRS agent, sentenced to four 12-month sentences, to run consecutively where gross income for the four-year period was just over $55,000).

This case law makes clear that prison sentences on failure to file cases are not uncommon and that the amount of tax loss plays a large part in the sentence imposed. A sentence of 12 months for the amount of tax loss here is certainly reasonable and sufficient but not greater than necessary to satisfy the directives of § 3553(a).

### Section 3553(a)(3) – kinds of sentences available

If the Court is not inclined to grant the defendant's request for a sentence of straight probation, the defendant, in the alternative, requests that the Court consider the "discretionary conditions of intermittent imprisonment, residence in a community corrections facility, home detention, and community service." ECF 42 at 15. The government asserts that none of these alternatives are warranted given the tax loss of $430,970, and this defendant's history and characteristics as detailed above, in addition to the need for adequate punishment and deterrence in this case. Specifically as it pertains to a sentence of intermittent confinement, the government notes that such a sentence is difficult for the Bureau of Prisons and the probation office to implement and supervise (*i.e.,* tracking each commitment, release, recommitment). In addition, intermittent confinement may only be imposed "during the first year of the term of probation or supervised release." § 3563(b)(10). If the Court were to order the defendant to serve two weekend days each week for one year, that amounts to 104 days of confinement, or a 3 ½ month sentence. Such a lenient sentence is not warranted for a case with a $430,970 tax loss, especially in light of this defendant's history and characteristics.

The government requests that the Court reject the defendant's request for a sentence other than one that requires incarceration, and submits that the appropriate

amount of incarceration is 12 months.

## CONCLUSION

The probation officer could not identify any factors that warranted a departure or variance in this case, and the arguments set forth above confirm that assessment. At sentencing, the government will request that the Court sentence the defendant to 12 months in prison, 1 year of supervised release, order the defendant to pay $430,970 in restitution to the Internal Revenue Service, pay a $4,000 fine, and impose all of the special conditions of supervised release as proposed by the probation officer.

## <u>CERTIFICATE OF SERVICE</u>

I certify that on this 18th day of January, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system that will send notification of such filing to all counsel of record in this case.

s/ *Martha A. Paluch*_____
MARTHA A. PALUCH
Assistant United States Attorney
1801 California Street, Suite 1600
Denver, CO 80202
Telephone 303-454-0100
Facsimile 303-454-0402
martha.paluch@usdoj.gov